FILED
APR 10 2014
[signature] CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| FIRST PREMIER BANK, PREMIER BANKCARD, LLC AND PREMIER NEVADA, LLC, <br><br> Plaintiffs, <br><br> VS. <br><br> ODYSSEAS PAPADIMITRIOU AND EVOLUTION FINANCE, INC., <br><br> Defendants. | CIV. 14 - 4055 <br><br> COMPLAINT |

Plaintiffs First PREMIER Bank ("First PREMIER"), PREMIER Bankcard, LLC ("PREMIER South Dakota") and PREMIER Nevada, LLC's ("PREMIER Nevada") (collectively, "PREMIER"), by their attorneys Tarter Krinsky & Drogin LLP and Cadwell Sanford Deibert & Garry LLP, for their complaint against Odysseas Papadimitriou and Evolution Finance, Inc. alleges as follows:

**JURISDICTION AND THE PARTIES**

1. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, particularly under 15 U.S.C. § 1125(a), and the common law, and is for unfair competition under federal and state law. This Court has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

2. Venue properly lies in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendants are transacting and doing business in this judicial district, are committing the acts complained of herein within this judicial district, have otherwise directed their illegal conduct complained of herein to this judicial district and are subject

to the jurisdiction of this Court pursuant to Rule 4 of the Federal Rules of Civil Procedure.  Among other things, Defendants, through their unauthorized conduct described below, are directing Internet users to online credit card application forms hosted on servers operated by PREMIER South Dakota's South Dakota-based agent in this State, which applications are forwarded by PREMIER's agent to PREMIER in this State.

3. Plaintiff First PREMIER is a South Dakota chartered bank having an address of 601 South Minnesota Avenue, Sioux Falls, South Dakota.

4. Plaintiff PREMIER South Dakota is a limited liability company formed under the laws of the State of South Dakota having an address of 3820 North Louise Avenue, Sioux Falls, South Dakota.

5. Plaintiff PREMIER Nevada is a limited liability company formed under the laws of the State of Nevada having an address of 3820 N. Louise Avenue, Sioux Falls, South Dakota.

6. Upon information and belief, defendant Evolution Finance, Inc. is a corporation located in Washington, D.C. with an address of 818 18th Street, No. 420, NW, Washington, DC.

7. Defendant Odysseas Papadimitriou is an individual who, upon information and belief, is the founder, chief executive officer, sole employee and sole shareholder of Evolution and controls and directs the actions of Evolution.  (Mr. Papadimitriou and Evolution are collectively referred to herein as "Defendants").

## FACTUAL BACKGROUND

PREMIER and Its Business

8.  First PREMIER, which is based in Sioux Falls, South Dakota, is an issuer of credit cards and provider of other financial services. First PREMIER provides its services under the name and mark FIRST PREMIER. Pursuant to an agreement between First PREMIER and PREMIER Nevada, PREMIER South Dakota and PREMIER Nevada service and market credit cards on behalf of First PREMIER using the FIRST PREMIER mark. First PREMIER, PREMIER South Dakota and PREMIER Nevada are sister companies owned by United National Corporation

9.  PREMIER South Dakota, which is responsible for First PREMIER's Internet marketing, uses the FIRST PREMIER mark pursuant to an agreement with PREMIER Nevada, which has rights to the FIRST PREMIER mark pursuant to an agreement with First PREMIER.

10. Since 1989, PREMIER's primary purpose has been to provide individuals with damaged credit histories an avenue to obtain credit through the use of a credit card to help them demonstrate positive financial patterns. PREMIER's goal is to help these individuals receive a second chance when it comes to their finances. So that these individuals are not placed in a position to further hinder their financial progress, the credit limits on the credit cards issued to them are kept low, usually around $300. PREMIER is one of the top twenty issuers of VISA® and MasterCard® credit cards in the country serving millions of customers nationwide.

11. PREMIER South Dakota promotes First PREMIER's credit card services via the Internet. Some of these promotional activities are conducted by Internet

marketers known as affiliates. Affiliates place Internet advertisements for third parties such as PREMIER South Dakota. These advertisements can take the form of banner ads placed by affiliates on third party websites as well as promotional websites operated by the affiliates themselves. Regardless of the type of advertisement, when an Internet user clicks on one of PREMIER South Dakota's affiliate's advertisements, the user is directed to an application for First PREMIER's credit cards. Typically, for each Internet user that clicks on an affiliate's ad and, after being directed to First PREMIER's application, completes and submits the application, PREMIER South Dakota pays that affiliate a fee.

12.  Federal Agencies that oversee the use of third party Internet affiliates to promote credit card and other bank services include regulatory agencies such as the Office of the Comptroller of the Currency ("OCC"), the Federal Reserve and the Consumer Financial Protection Bureau ("CFPB") (collectively the "Regulatory Agencies").

13.  The Regulatory Agencies require banks, such as PREMIER, which use third parties to promote their products, to, among other things, conduct proper due diligence in selecting a third party and engage in ongoing monitoring of the third party's activities and performance. The Regulatory Agencies have detailed regulations governing, among other things, the accuracy of disclosures contained in a bank's Internet advertising.

14.  PREMIER diligently strives to fully comply with these regulatory obligations. Among other things, PREMIER South Dakota conducts thorough due diligence with respect to its Internet affiliates and actively monitors their activities and performance. In addition, PREMIER South Dakota reviews and approves all of its

4

affiliates' advertising copy before the affiliates use the copy for marketing purposes. PREMIER South Dakota does this in order to ensure that its affiliates' advertising complies with all regulations.

15. PREMIER South Dakota, as with all other financial institutions, is regularly examined by a number of state and/or federal agencies. These examinations usually include a review of PREMIER South Dakota's business relationships with third parties like Internet affiliates. In addition, the CFPB and the Federal Reserve can review a financial institution's advertising. If an examination or review reveals that a financial institution is not fully complying with regulations governing relationships with third parties or Internet advertising, the financial institution could be subject to fines and other disciplinary action.

16. First PREMIER owns United States Trademark Registration No. 3,108,850 for FIRST PREMIER for banking services, credit card services, and treasury management services. This registration valid, subsisting and incontestable. A true and correct copy of this registration from the United States Patent and Trademark Office's Internet database is attached hereto as Exhibit 1.

17. The credit card and financial services offered in connection with the FIRST PREMIER mark are widely recognized by consumers to be of the highest quality, which are offered and sold under superior customer service conditions. As a result thereof, the FIRST PREMIER mark and the goodwill associated therewith are of inestimable value to FIRST PREMIER.

18. By reason of the distinctiveness of the FIRST PREMIER mark, this trademark indicates to customers, potential customers and the trade that credit card and

financial services offered in connection with the FIRST PREMIER mark are offered and provided by PREMIER.

19.     By virtue of the wide renown acquired by the FIRST PREMIER mark coupled with the significant promotion of services provided under the FIRST PREMIER mark, of the widespread use of FIRST PREMIER credit cards and the significant amount of sales under that mark, the FIRST PREMIER mark has become famous and has developed a secondary and distinctive meaning and significance in the minds of the trade and the relevant purchasing public, such that credit card and financial services offered under or in connection with this trademark are immediately identified by the purchasing public with FIRST PREMIER.

Defendants' Illegal Conduct

20.     Upon information and belief, defendants Odysseas Papadimitriou and Evolution Finance, Inc. ("Evolution") own and operate the website with the web address of www.cardhub.com (the "Accused Website"). According to the WhoIs information for the cardhub.com domain name, Mr. Papadimitriou owns that domain name.

21.     Upon information and belief, Mr. Papadimitriou owns Evolution, is its Chief Executive Officer, is Evolution's sole employee and exclusively controls its actions. A true and correct copy of the WhoIs information for the cardhub.com domain name is attached hereto as Exhibit 2.

22.     At times between June 2008 and January 2011, Evolution was one of PREMIER South Dakota's Internet affiliates. During that time, Evolution promoted First PREMIER's FIRST PREMIER and other credit cards. The relationship between Evolution and PREMIER South Dakota was governed by an Internet Marketing

Agreement dated June 15, 2008 (the "Agreement").  A true and correct copy of the Agreement is attached hereto as Exhibit 3.

23. Before Evolution became one of PREMIER South Dakota's Internet affiliates, PREMIER South Dakota conducted the required diligence on that entity. During the time that Evolution was one of PREMIER South Dakota's affiliates, PREMIER South Dakota engaged in the required ongoing monitoring of Evolution's activities and performance.

24. PREMIER South Dakota terminated its relationship with Evolution for good on January 3, 2011, with a termination effective date of January 15, 2011.

25. During the time that it was an affiliate of PREMIER South Dakota, Evolution's primary marketing activity on behalf of PREMIER South Dakota was to promote First PREMIER's credit card services on the Accused Website.  During that time, when Internet users clicked on a link on the Accused Website, a banner ad for FIRST PREMIER credit cards would appear.  These banner ads contained links to an application for FIRST PREMIER credit cards, which the Internet user could then complete and submit.

26. The Agreement defined "Banner" as "a graphic message and any other information that appears in the screen when accessing [Evolution's] Website, or a graphic message that appears in a Link, "pop-up" advertisement or exit console, promoting [First PREMIER's] credit card products or directing Traffic to PREMIER's website."

27. The banner ads used by Defendants contained links to an application for FIRST PREMIER credit cards, which the Internet user could then complete and submit.

28. Pursuant to Section 10.B. of the Agreement, Defendants, upon the termination of the Agreement, were required to remove from the Accused Website all banner ads promoting First PREMIER.

29. At all relevant times, Defendants' Accused Website was and continues to be a marketing website designed to promote the products and services of the businesses to which Evolution acts as an affiliate. The products and services include credit cards, prepaid debit cards and gift cards.

30. At all relevant times, the Accused Website contains and continues to contain links to third party websites where Internet users can apply for or purchase the products promoted on the Accused Website. Upon information and belief, Evolution is typically compensated when an Internet user clicks on one of these links and applies for or purchases a product or service promoted on the Accused Website. Attached hereto as Exhibit 4 are true and correct copies of relevant portions of the Accused Website.

31. After PREMIER South Dakota terminated Evolution in January 2011, Defendants continued to promote First PREMIER's credit cards on the Accused Website, often using banner ads (as that term is defined in the Agreement) and unauthorized copies of First PREMIER's registered trademarks and unauthorized images of actual First PREMIER credit cards bearing First PREMIER's registered trademark.

32. By letter dated July 8, 2011, PREMIER South Dakota put Defendants on notice of their infringing conduct. A true and correct copy of the July 8, 2011 letter is attached hereto as Exhibit 5. After an exchange of correspondence between Defendants and PREMIER South Dakota's attorneys, Defendants appeared to cease their infringing conduct.

33. In August 2012, PREMIER South Dakota learned that Defendants were again infringing First PREMIER's trademarks on the Accused Website. By letter dated August 29, 2012, PREMIER South Dakota again put Defendants on notice of their infringing conduct. A true and correct copy of the August 29, 2012 letter is attached hereto as Exhibit 6. Again, after an exchange of correspondence between Defendants and PREMIER South Dakota's attorneys, Defendants appeared to cease their infringing conduct.

34. In November 2012, PREMIER South Dakota learned that Defendants were again infringing First PREMIER's trademarks on the Accused Website. By letter dated November 20, 2012, First PREMIER again put Defendants on notice of their infringing conduct. A true and correct copy of the November 20, 2012 letter is attached hereto as Exhibit 7. Again, after an exchange of correspondence between Defendants and PREMIER South Dakota 's attorneys, Defendants appeared to cease their infringing conduct

35. Recently, PREMIER South Dakota learned that Defendants have resumed infringing First PREMIER's trademarks on the Accused Website.

36. Among other things, Defendants, without authorization, are promoting FIRST PREMIER credit cards through banner ads appearing on the Accused Website even though PREMIER has no relationship with Defendants. All of these unauthorized promotions have "Apply Now" buttons which direct Internet users to a genuine online application form for a FIRST PREMIER credit card. True and correct examples of the unauthorized promotions for FIRST PREMIER currently displayed on the Accused Website are attached hereto as Exhibit 8.

37. The unauthorized promotions for FIRST PREMIER credit cards on the Accused Website provide descriptions of those credit cards and relevant terms including APR's, late and other fees, cash advance rates and credit limits. Pursuant to a CFPB regulation, 12 CFR § 1026.16, if an advertisement for a for a credit card contains information about fees or rates associated with the credit card, the advertisement must contain the full terms and conditions of the credit card or contain a link to a web page where the full terms and conditions can be found. The information regarding FIRST PREMIER credit cards on the Accused Website does not set forth the full terms and conditions of the credit card or contain a link to a web page where the full terms and conditions can be found. In addition, depending upon the offers being run by First PREMIER at any given time, the information on the Accused Website regarding FIRST PREMIER credit cards can be incomplete, inaccurate or simply wrong.

38. PREMIER South Dakota has created an intermediary landing page for Internet users directed to a FIRST PREMIER application from unauthorized websites such as the Accused Website. This landing page encourages users to review the terms and conditions of the FIRST PREMIER credit card and provides a link to a FIRST PREMIER credit card application, where full terms and conditions can be accessed. Nevertheless, there is a risk that Internet users will incorrectly believe that the information on the Accused Website regarding FIRST PREMIER credit cards is complete and accurate and apply for a FIRST PREMIER credit card based on this incorrect belief.

39. The unauthorized promotions for FIRST PREMIER credit cards on the Accused Website contain a Q&A feature which enables users to submit questions about

the FIRST PREMEIR credit card being promoted. PREMIER plays no role in and has no control over the answers given to users' questions submitted through this feature.

40. The unauthorized promotions for FIRST PREMIER credit cards on the Accused Website contain a "review" feature. The Accused Website does not contain the appropriate disclaimers stating that PREMIER did not create nor is responsible for the content found in the reviews. Such a disclaimer is considered a "best practice" to ensure that consumers know that any non-credit card offer related information is not associated with PREMIER.

41. Because Evolution is not an affiliate of PREMIER South Dakota, PREMIER South Dakota has not conducted due diligence on Evolution in a number of years nor has it engaged in ongoing monitoring of Evolution's activities and performance. The promotions for FIRST PREMIER on the Accused Website have not been reviewed by PREMIER South Dakota to ensure compliance with CFPB regulations.

42. PREMIER is concerned that Defendants' unauthorized and inaccurate promotions of FIRST PREMIER's products and services may trigger a review of PREMIER's advertising by the CFPB as well as invite the scrutiny of the Federal Reserve and the OCC. All of this would be highly disruptive to PREMIER's business.

43. Since PREMIER has not had any relationship with Evolution since January 2011, Defendants are not realizing any direct monetary gains through their unauthorized conduct. However, upon information and belief, because FIRST PREMIER credit card products can be considered a major, well-known brand, and because consumers have very limited options for sub-prime credit cards, the placement of promotions for FIRST PREMIER credit cards on the Accused Website can result in

11

increased Internet traffic to the Accused Website from Internet users searching for FIRST PREMIER and/or sub-prime credit cards.

44. Upon information and belief, the "Apply Now" links to FIRST PREMIER credit cards on the Accused Website help cause the Accused Website to be ranked higher by search engines, i.e., towards the top of the search results page, particularly when a user conducts a search for FIRST PREMIER.

## FIRST CAUSE OF ACTION
## UNFAIR COMPETITION UNDER 17 U.S.C. § 1125(a)

45. PREMIER repeats and realleges the allegations of Paragraphs 1-44 as if fully set forth herein.

46. As a result of PREMIER's marketing, promotion and sales of goods and services under and in connection with the PREMIER mark, the PREMIER mark has developed and has a secondary and distinctive meaning to consumers, potential consumers and the trade so that goods and services offered under and in connection with the PREMIER mark are known and understood to originate from PREMIER.

47. Defendants have used the PREMIER mark with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the reputation of PREMIER and to improperly appropriate PREMIER's valuable trademark rights.

48. Defendants' use and continued use of the PREMIER mark is likely to cause confusion, mistake or deception in the minds of the trade and purchasing public and create the erroneous impression that Defendants' use of the PREMIER mark and the provision of goods and services under and in connection with the PREMIER mark is authorized, endorsed, sponsored, authorized or approved by PREMIER and/or, that

PREMIER's offering of goods and services under and in connection with the PREMIER mark is provided, authorized, endorsed, sponsored, authorized or approved by Defendants.

49. Defendants' use of the PREMIER mark constitutes a use in interstate commerce of a false designation of origin and a false and misleading description and representation of goods in commerce, with knowledge of the falsity, which has and is likely to cause confusion, mistake and deception and a use in commercial advertising and promotion which misrepresents the nature, characteristics, qualities and origin of the Defendants' goods and commercial activities, all within the meaning and in violation of 15 U.S.C. § 1125(a).

50. Defendants' use and continued use of the PREMIER mark is causing and, unless enjoined, will continue to cause irreparable harm and damage to PREMIER and its business, reputation and goodwill and has caused PREMIER to suffer monetary damages in an amount to be determined at trial.

51. Unless restrained and enjoined, Defendants' aforesaid acts will cause PREMIER irreparable harm and damage for which there is no adequate remedy at law.

## SECOND CAUSE OF ACTION
## COMMON LAW UNFAIR COMPETITION

52. PREMIER repeats and realleges the allegations contained in Paragraphs 1-51 as if fully set forth herein.

53. This claim arises under the common law of this District relating to unfair competition.

54. As more fully set forth above, the PREMIER mark, to the extent that it is not inherently distinctive, has come to have a secondary meaning indicative of origin,

relationship, authorization, sponsorship and/or association with PREMIER. As a result, the purchasing public and the trade are likely to attribute to PREMIER Defendants' use of the PREMIER mark as a source of origin, authorization and/or sponsorship of Defendants' services and therefore, to purchase Defendants' goods and based on that erroneous belief and/or attribute to Defendants PREMIER's use of PREMIER mark as a source of origin, authorization and/or sponsorship of PREMIER's goods, and therefore, to purchase PREMIER's goods based on that mistaken belief.

55. Upon information and belief, Defendants intentionally appropriated the PREMIER mark and the goodwill associated therewith with the intent of causing confusion, mistake, and deception as to the source of origin, relationship, sponsorship, and/or association of Defendants' goods and services, and with the intent to palm off its goods as being approved, authorized or sponsored by PREMIER and to take advantage of PREMIER's efforts to promote the goods and services offered under the PREMIER mark and the PREMIER mark. As such, Defendants have committed unfair competition under the common law.

56. By reason of such infringement, unfair competition and misappropriation by Defendants and by Defendants' promotion and offering of goods and services under and in connection with the PREMIER mark, Defendants have caused, and unless restrained and enjoined will continue to cause, irreparable injury to PREMIER's business, reputation and goodwill and otherwise cause PREMIER to suffer monetary damages in an amount to be determined at trial.

57. Defendants' conduct in intentionally misappropriating PREMIER's goodwill and engaging in unfair competition was intended to wrongfully enrich

Defendants and to deliberately and willfully injure PREMIER in wanton disregard of PREMIER's rights and Defendants' legal obligations. PREMIER is therefore entitled to an award of punitive damages in an amount of no less than $5,000,000.

58. Unless restrained and enjoined, Defendants' continuing acts of unfair competition have caused and will continue to cause irreparable harm and damage to PREMIER for which there is no adequate remedy at law.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

59. PREMIER repeats and realleges the allegations contained in Paragraphs 1-58 as if fully set forth herein.

60. PREMIER South Dakota and Evolution are parties to the Agreement.

61. Pursuant to Section 10.B. of the Agreement, Evolution, upon the termination of the Agreement, was required to remove from the Accused Website all banner ads promoting First PREMIER.

62. After PREMIER South Dakota terminated the Agreement in January 2011, Evolution, at the direction of Mr. Papadimitriou and in violation of the Agreement, promoted and continues to promote First PREMIER's credit cards on the Accused Website, using "banner" ads as that term is defined in the Agreement.

63. Among other things, the Accused Website features graphic messages that appear in the screen when accessing the Accused Website promoting First PREMIER's credit card products and direct Internet traffic to PREMIER.

64. By reason of the foregoing, Evolution has breached the express terms of the Agreement.

65. PREMIER South Dakota is not in breach of the Purchase Agreement, and

15

has fulfilled its obligations under such agreement.

66.     Despite due demand, the above breaches of the Agreement have not been cured by Defendant.

67.     Defendant's actions constitute acts of bad faith and willful misconduct.

68.     As a direct result of such breach of contract, Evolution has caused, and unless restrained and enjoined will continue to cause, irreparable injury to PREMIER's business, reputation and goodwill and otherwise cause PREMIER to suffer monetary damages in an amount to be determined at trial.

69.     Unless restrained and enjoined, Evolution's continuing acts of breaching the Agreement have caused and will continue to cause irreparable harm and damage to PREMIER for which there is no adequate remedy at law.

WHEREFORE, PREMIER Bankcard, LLC demands judgment:

1.     That Defendants, their shareholders, officers, agents, servants, employees, attorneys and anyone acting in concert or participation with them be preliminarily and permanently enjoined from:

    (a)     Appropriating and using the FIRST PREMIER name and mark for commercial purposes;

    (b)     Using the FIRST PREMIER mark or any colorable imitation thereof in connection with offering, selling, advertising or promoting the sale of any goods or services or from otherwise using any name or mark confusingly similar thereto;

    (c)     Infringing the FIRST PREMIER mark, and unfairly competing with First PREMIER;

16

(d) Placing on the Accused Website or any other website that is directly or indirectly owned, operated or controlled by Defendants graphic messages and any other information that appears in the screen when accessing that website, or a graphic message that appears in a link, "pop-up" advertisement or exit console appearing on such website that promotes First PREMIER's credit card products, directs Internet users to websites where persons can apply for First PREMIER's credit card products or directs Internet traffic to PREMIER's websites; and

(e) Using in connection with the sale of any goods or services or the dissemination or distribution of advertising, promotional or marketing materials, a false or misleading description or representation including words or other symbols tending to deceive or cause confusion with First PREMIER or the FIRST PREMIER mark.

2. That Defendants be required to account to PREMIER for all profits resulting from Defendants unfair competition and that such award of profits to PREMIER be increased by the Court as provided for under 15 U.S.C. § 1117(b);

3. That PREMIER have a recovery from Defendants of all damages sustained by PREMIER resulting from Defendants' unfair competition and breach of contract;

4. That PREMIER be awarded restitution of all monies unfairly obtained by Defendants through their unfair competition and breach of contract;

5. That PREMIER have a recovery from PREMIER of the costs of this action and Plaintiffs' reasonable counsel fees pursuant to 15 U.S.C. § 1117; and

6. That PREMIER have such other and further relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

PREMIER hereby demands a trial by jury.

Dated: April 10, 2014

                              CADWELL SANFORD DEIBERT & GARRY, LLP

By: /s/ James S. Simko
James S. Simko
200 East 10th Street, Suite 200
P.O. Box 1157
Sioux Falls, SD 57101-1157
Tel. 605-336-0828

Mark J. Rosenberg (*pro hac vice* admission pending)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Tel. 212-216-1127